# Case No. 299.

## AMERICAN DREDGING CO. v. The BEDOWIN.

[37 Leg. Int. 52; 26 Int. Rev. Rec. 38.][1]

District Court, D. New Jersey.  Dec. 10, 1879.

ADMIRALTY—PRACTICE—COLLISION—DREDGE AT ANCHOR.

1. Where a case turns upon the negligence of the respondent, and the negligence appears from the admissions of the answer, the libellant may ask for a hearing without further proofs.

2. Dredging machines lawfully engaged in improving navigation, have the rights of a vessel at anchor.

3. Where a collision occurs—one of the vessels being at anchor—the presumption is, that the other vessel is at fault; and must make full compensation for the damages, unless the accident was inevitable.

[In admiralty. Libel in rem for collision, by the American Dredging Company, owners of the steam dredge Baltic, against the steamship Bedowin, her engines, etc. On libellant's motion for an interlocutory decree. Granted.]

J. Warren Coulston, for libelant.

H. G. Ward and M. P. Henry, for respondent.

NIXON, District Judge. This is a motion for an interlocutory decree against the respondent, upon the libel and answer.

---

[1][Reprinted from 37 Leg. Int. 52, by permission.]

Although not according to the usual practice in the admiralty, the advocate for the libellant claims that where the case turns upon the negligence of the respondent, and the negligence clearly appears from the admission in the answer, it becomes not only the privilege, but the duty, of the libellant, to ask for a hearing without any further proofs. Such a course, doubtless, is sanctioned by the late Judge Conkling, in his Treatise on the Jurisdiction, Law, and Practice in Admiralty, (volume 2, p. 256,) where it is said: "If the answer of the defendant contains admission of the allegations of the libel to an extent sufficient, in the opinion of the libellant, to supersede the necessity of proof, he may at once have the cause set down for hearing upon the libel and answer alone. No good reason is perceived why such a practice should not be allowed. What the effect would be of finding against the libellant on the motion, need not be discussed or decided until the question arises.

The allegations of the libel substantially are, that the dredge "Baltic" is a floating vessel, supplied with steam power, machinery, and apparatus to dredge and deepen waters; that on the 17th day of July, 1879, about half-past three in the afternoon, she was anchored, with three anchors out and two spuds down, holding her firm and fast, and engaged at work in the business of dredging the channel of the Patapsco river, in the state of Maryland, below Hawkins' Point, under a contract with the government of the United States, to improve the navigation of the said river; that whilst thus engaged the steamship "Bedowin," loaded and bound out, was steaming down the river, and came into collision with the dredge, head on, and striking her with such force and violence as to do her considerable damage; that the collision occurred when the weather was fair and clear, in broad daylight, and with water of sufficient depth on all sides of the dredge to admit of the passing of vessels going up and down the river with absolute safety, and that it was caused solely by the negligence, carelessness, and want of proper skill and management of those in charge of the steamship.

The answer avers that the "Bedowin" is of 1,990 tons registered tonnage, 295 feet in length, and at the time of the collision was loaded with wheat for Havre, France, and drawing 21 feet and 9 inches forward, and 21 feet 11 inches aft; that she was in the charge of a duly licensed pilot, and had been going down the river at half speed, which was about five knots an hour; that just before she reached the dredge she put her helm a-port to clear some shipping in the river; that as there was not water enough in the channel to pass the dredge on the starboard, she put her wheel hard-a-starboard with the intention of passing the dredge on the port side; but that she was then sucking the bottom, and continued on her course without responding to her helm; that perceiving a collision was imminent, the engines of the steamship were stopped, and then reversed full speed astern; but that, notwithstanding the efforts of the pilot and those on board to prevent it, she struck the dredge, causing some damage, but not to the extent complained of. It denies the allegation of the libel that there was water enough on either side of the dredge for vessels to pass up and down the river with absolute safety, but admits that there was sufficient on the port side; and also denies that the accident was the result of any want of care on the part of the steamship, but attributes it to the narrowness and direction of the channel, and especially to the position of the dredge, which made safe navigation under the circumstances impossible.

The dredge was anchored, and therefore incapable of getting out of the way. An attempt was made on the argument to refuse to dredging machines the privileges of a vessel at anchor, but the supreme court has clearly recognized their right to occupy the channels of rivers when lawfully there to improve the navigation. See The Virginia Ehrman, 97 U. S. 309. The libellant's dredge was fixed in the channel, engaged in widening and deepening it under a contract with the government of the United States, as appears by the production of said contract to the court, by the consent of the parties in the hearing. Being lawfully there at anchor, and without fault, the libellant is entitled to full compensation for the damage received by the dredge, unless the collision occurred from inevitable accident. Id. 310. I think it is fairly to be inferred, from what is contained as well as from what is omitted in the answer, that the accident was not inevitable, and that the libellant is entitled to a decree without going to the proofs. In cases of collision, where one of the vessels is at anchor and the other in motion, the presumption always is that the latter is in fault. This is emphatically the case where the moving vessel is a steamer, which is more absolutely under control than a sailing craft. The burden of proof is therefore upon the respondent. What excuse does the answer make? The collision was in the middle of a pleasant afternoon. The dredge was in open sight, and the steamship was under the direction of a licensed pilot, whose profession and business it was to know the channel and the depth of the water, and to be in readiness for any emergency that might arise from the steamer "smelling the bottom." The answer admits that she was of heavy draft, and claims that the channel was narrow and the navigation difficult, and yet there seems to have been no exercise of carefulness or any request to the dredge to move out of the way, or any attempt to stop the steamer until the danger of collision was imminent. It was then

too late to avert the accident, and I must hold the respondent responsible for the consequences of such want of care.

Let an interlocutory decree be entered for the libellant, and a reference be made to the clerk as commissioner, to ascertain and report the damage sustained by the dredge and her owners by reason of the collision.